IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., <br>               Plaintiff, <br> and <br> GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., *et al.*, <br>               Consolidated Plaintiffs, <br> v. <br> UNITED STATES, <br>               Defendant, <br> and <br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br>               Defendant-Intervenor. | Before: Hon. Leo M. Gordon, <br>         Senior Judge <br> Consol. Court No. 16-00009 |

## DEFENDANT-INTERVENOR'S RESPONSE COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

                                                                Alan H. Price, Esq. <br>
                                               Robert E. DeFrancesco, III, Esq. <br>
                                               Elizabeth S. Lee, Esq.

                                               WILEY REIN LLP <br>
                                               1776 K Street, NW <br>
                                               Washington, DC 20006 <br>
                                               (202) 719-7000

                                               *Counsel for the Aluminum Extrusions Fair Trade Committee*

**Dated: April 23, 2021**

## TABLE OF CONTENTS

**(Pages)**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | ARGUMENT | 4 |
| IV. | CONCLUSION | 7 |

# TABLE OF AUTHORITIES

                                                                                     **Page(s)**

**Cases**

*Shenyang Yuanda Aluminum Eng'g Co. v. United States*,
   279 F. Supp. 3d 1209 (Ct. Int'l Trade 2017), *aff'd*, 918 F.3d 1355 (Fed. Cir. 2019) ...................................................................................................................... 2, 3

*Taizhou United Imp. & Exp. Co. Ltd. v. United States*,
   475 F. Supp. 3d 1305 (Ct. Int'l Trade 2020) ................................................................ 3, 5

*TMK IPSCO v. United States*,
   179 F. Supp. 3d 1328 (Ct. Int'l Trade 2016) ................................................................... 6

**Statutes**

19 U.S.C. § 1677(5)(E)(iv) ................................................................................................... 7

**Regulations**

19 C.F.R. § 351.511(a) .......................................................................................................... 7

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China*, 80 Fed. Reg. 77,325
   (Dep't Commerce Dec. 14, 2015) .................................................................................. 1

*Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653
   (Dep't Commerce May 26, 2011) .................................................................................. 1

**Other Authorities**

Memorandum from James Terpstra, Senior Int'l Trade Analyst, Off. III, to Christian Marsh, Deputy Assistant Sec'y, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Curtain Wall Units that are Produced and Imported Pursuant to a Contract to Supply a Curtain Wall* (Mar. 27, 2014), available at https://enforcement.trade.gov/download/prc-ae/scope/38-curtain-wall-units-7apr14.pdf ........................................................................................................................ 2

**Consol. Ct. No. 16-00009**

I. **INTRODUCTION**

On behalf of Defendant-Intervenor Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following comments in response to the Plaintiff and Consolidated Plaintiffs' comments on the December 17, 2020 remand redetermination issued by the U.S. Department of Commerce ("Commerce"). *See* Comments of Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., *et al.*, in Opp'n to Remand Results (Feb. 19, 2021) ("Jangho Companies Comments on Remand Results"), ECF No. 109; Comments of Pl. Taizhou United Imp. & Exp. Co. Ltd. in Opp'n to the Remand Results (Feb. 19, 2021), ECF No. 110; Final Results of Redetermination Pursuant to Ct. Remand, *Taizhou United Imp. & Exp. Co. Ltd. v. United States*, Consol. Ct. No. 16-0009, Slip. Op. 20-138 (CIT Sept. 25, 2020) (Dec. 17, 2020) ("Remand Results"), ECF No. 103.

II. **BACKGROUND**

This action arises out of Commerce's final results in the third administrative review of the countervailing duty order on aluminum extrusions from the People's Republic of China finding that subsidy programs providing glass and aluminum extrusions used in parts of curtain wall units for less than adequate remuneration ("LTAR") were countervailable. *See id.* at 3; Issues and Decision Memorandum accompanying *Aluminum Extrusions from the People's Republic of China*, 80 Fed. Reg. 77,325 (Dep't Commerce Dec. 14, 2015) (final results, and partial rescission of countervailing duty admin. rev.; 2013) ("Third Admin. Rev. IDM") at 97-100, P.R. 416;[1] *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce

---

[1] Documents on the public record of the underlying administrative review are identified by "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on Mar. 28, 2016. Documents on the public record of the remand proceeding are identified by "P.R.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on Dec. 29, 2020.

1

**Consol. Ct. No. 16-00009**

May 26, 2011) (countervailing duty order) ("CVD Order"). In the underlying administrative review, Guangzhou Jangho Curtain Wall System Engineering Co., Ltd. and Jangho Curtain Wall Hong Kong Ltd. argued that Commerce could not countervail the provision of glass for LTAR because glass is not an input of the subject merchandise. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce, re: *Aluminum Extrusions from the People's Republic of China: Case Brief* (Nov. 5, 2015) at 2-5, P.R. 405. The respondent also argued that Commerce could not countervail the provision of aluminum extrusions for LTAR because aluminum extrusions are the subject merchandise and therefore are not an input of the subject merchandise. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce, re: *Aluminum Extrusions from the People's Republic of China: Rebuttal Brief* (Nov. 10, 2015) at 3-4, P.R. 413.

Similar merchandise to the respondent's curtain wall units had been the subject of a previous scope ruling request at Commerce and subsequent litigation at this Court and at the Court of Appeals for the Federal Circuit (the "Federal Circuit"). *See Shenyang Yuanda Aluminum Eng'g Co. v. United States*, 279 F. Supp. 3d 1209 (Ct. Int'l Trade 2017), *aff'd*, 918 F.3d 1355 (Fed. Cir. 2019); Memorandum from James Terpstra, Senior Int'l Trade Analyst, Off. III, to Christian Marsh, Deputy Assistant Sec'y, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Curtain Wall Units that are Produced and Imported Pursuant to a Contract to Supply a Curtain Wall* (Mar. 27, 2014) ("Scope Ruling"), available at https://enforcement.trade.gov/download/prc-ae/scope/38-curtain-wall-units-7apr14.pdf. Commerce found that requesting companies, Yuanda USA Corporation and Shenyang Yuanda Aluminum Industry Engineering Co., Ltd.'s (collectively, "Yuanda"), curtain wall units fell within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders"). Scope Ruling at 1, 27. This Court,

**Consol. Ct. No. 16-00009**

affirmed by the Federal Circuit, held that Commerce was correct in finding that curtain wall units imported under a contract for an entire curtain wall are within the scope of the Orders. *Shenyang Yuanda Aluminum Eng'g Co.*, 279 F. Supp. 3d 1209.

On December 14, 2015, Commerce issued its final results for the third administrative review of the CVD Order. In relevant part, Commerce noted that it had already found parts of curtain wall units, including curtain wall units such as those produced by the respondent, to be covered by the scope of the CVD Order. *See* Third Admin Rev. IDM at 97. Glass and aluminum extrusions are both inputs for curtain wall units, so Commerce found that subsidy programs providing those inputs for LTAR are countervailable. *See id.* at 97-100.

Taizhou United Imp. & Exp. Co. Ltd. and Beijing Jangho Curtain Wall System Engineering Co., Ltd.; Beijing Jiangheyuan Holding Co., Ltd.; Guangzhou Jangho Curtain Wall System Engineering Co., Ltd.; Jangho Curtain Wall Hong Kong Ltd.; Jangho Group Co., Ltd.; Shanghai Jangho Curtain Wall System Engineering Co., Ltd. (collectively, the "Jangho Companies") both appealed Commerce's final results as to the countervailability of glass and aluminum extrusions for LTAR to this Court. These appeals were consolidated into this case. Order (June 10, 2016), ECF No. 38. The Court held that Commerce misinterpreted the scope language and that glass inputs cannot be countervailed because glass is not subject merchandise. *Taizhou United Imp. & Exp. Co. Ltd. v. United States*, 475 F. Supp. 3d 1305, 1310-11 (Ct. Int'l Trade 2020). The Court remanded this issue to Commerce. *Id.* The Court also held that Commerce's supposed explanation that "aluminum extrusions are inputs for aluminum extrusions" was "hollow" and that Commerce needed to reconsider how to capture the subsidization of aluminum extrusions for LTAR upon remand. *Id.* at 1311. The Court sustained Commerce's determinations on three additional issues unrelated to these remand comments: 1) that Commerce's suspension of liquidation of the

**Consol. Ct. No. 16-00009**

plaintiff's entries was not in violation of Commerce's regulations, 2) that the plaintiffs received countervailable policy loans, and 3) that the Preferential Tax Policies for High or New Technology Enterprises and Tax Offsets for Research and Development programs were specific as a matter of law. *Id.* at 1311-17.

### III.    ARGUMENT

The Court should sustain Commerce's remand results that provision of glass for LTAR and provision of aluminum extrusions for LTAR are countervailable subsidies as they relate to the production of subject merchandise.[2] In their comments on Commerce's remand results, the Jangho Companies claimed that Commerce did not comply with the Court's order to "give effect to the Order's language excluding 'non-aluminum extrusion components of subassemblies' from the scope of the Order." Jangho Companies Comments on Remand Results at 3 (quoting Remand Results at 4). Instead, they claim, Commerce improperly provided further explanation regarding its results in the underlying administrative review and that, if it had wanted to properly do so, it should have moved for rehearing. *Id.* The Jangho Companies refer to Commerce's remand redetermination as "an attempt to substitute a post hoc rationalization of its determination for its actual determination." *Id.* at 4.

This is a mischaracterization of Commerce's remand results. Indeed, in its remand redetermination, Commerce reiterated its results in the underlying administrative review, stating, "we concluded that the 'benefits arising from the provision of glass for LTAR are not tied to non-subject merchandise.'" Remand Results at 7 (quoting Third Admin. Rev. IDM at 97-98). Commerce clarified that this means that, "our benefit analysis examines whether the respondent

---

[2]    Plaintiff and Consolidated Plaintiffs' remand comments solely address the provision of glass for LTAR issue, so these response comments also solely address that issue. Further, these comments address only Consolidated Plaintiffs' remand comments, as Plaintiff's remand comments incorporated Consolidated Plaintiffs' remand comments by reference.

4

<u>company</u> has been provided a subsidy that confers a benefit to the company, and not whether the benefit can be shown to flow directly to its production of subject merchandise." *Id.* at 8. Thus, contrary to the Jangho Companies' argument, Commerce's remand results are not a departure from its results in the underlying administrative review but are a clarification of those results. In making this clarification, Commerce complied with the Court's order to "give effect" to the scope language. *See Taizhou United Imp. & Exp. Co. Ltd.*, 475 F. Supp. 3d at 1316-17.

The Jangho Companies also cite to the "law of the case" doctrine in support of its claim that the court should not allow Commerce to provide "new rationale" for its finding that the provision of glass for LTAR is countervailable. Jangho Companies Comments on Remand Results at 6-7. This supposed "new rationale" refers to Commerce's citation to 19 C.F.R. § 351.511(a), the regulation that describes that a benefit is conferred when goods or services are provided at LTAR. This is not a "new rationale" but an explanation of the legal standard under which Commerce made its original determination that glass for LTAR was countervailable.

As Commerce thoroughly explained in its remand results:

> These provisions do not require that the goods provided for LTAR be used, exclusively or otherwise, <u>in</u> the production of subject merchandise; they merely refer to those goods that are provided for LTAR to the producer of the subject merchandise. Although in most instances where Commerce investigates an LTAR program, the goods provided turn out to be input goods, that is largely a function of the alleged programs that the petitioners bring before Commerce, and it should not be interpreted to mean that only the provision for LTAR of input goods for the production of subject merchandise may be found to provide countervailable benefits to the respondent.

Remand Results at 9. Despite this explanation, the Jangho Companies still rely on the misunderstanding that a subsidy must be tied to a particular product. They state that, "{t}he benefit of alleged subsidies accrue only when the recipient chooses to purchase glass at LTAR. . . . The benefit of the subsidy does not support the general operations of the company as would a cash

5

**Consol. Ct. No. 16-00009**

subsidy or the provision of land or energy subsidies for LTAR." Jangho Companies Comments on Remand Results at 7. Here, the Jangho Companies are attempting to claim that there is some relevant distinction between subsidies that support the production of a product and subsidies that support the general operations of a company. They provide no citations in support of this distinction. Indeed, their assertion that "alleged subsidies accrue only when the respondent chooses to purchase glass at LTAR" could be said for any subsidy. *See id.* That is, a subsidy would not accrue if a respondent did not accept cash from its government, nor would a subsidy accrue if the respondent paid market rates for the land on which its facility sits or the energy it uses to fuel its operations.

Finally, the Jangho Companies claim that the provision of glass for LTAR subsidy was meant to promote the Chinese glass industry and that "{a}ny benefit to glass purchasers was incidental to the purpose of the subsidies." *Id.* at 8. In support of this apparently new argument, Jangho cites *TMK IPSCO v. United States*, 179 F. Supp. 3d 1328 (Ct. Int'l Trade 2016), for the proposition that Commerce analyzes the purpose of the subsidy, not the ultimate use of the funds provided under the subsidy. Jangho Companies Comments on Remand Results at 8. The Jangho Companies' reliance on this case is misguided. In *TMK IPSCO*, the respondent was provided steel rounds at LTAR, which Commerce tied to the respondent's consolidated sales, rather than its sales of seamless steel pipe products, even though the provision of steel rounds at LTAR was meant to benefit only the respondent's production of seamless steel pipe products. *TMK IPSCO*, 179 F. Supp. 3d at 1358. The Court remanded this issue to Commerce to determine whether Commerce was required to tie the subsidy only to the production of one product, rather than the respondent's entire production. *Id.* at 1359. Thus, in the context of *TMK IPSCO*, a subsidy's "purpose" refers to how broadly it should be applied to a company's production, not whether it was meant to benefit

6

**Consol. Ct. No. 16-00009**

the producer. As Commerce stated in its remand results, provision of goods or services at LTAR confers a benefit on the respondent. *See* Remand Results at 8; *see also* 19 U.S.C. § 1677(5)(E)(iv); 19 C.F.R. § 351.511(a). Whether the Chinese government had an additional goal of promoting the glass industry in providing this subsidy to the Jangho Companies does not negate that the subsidy conferred a benefit.

### IV.   CONCLUSION

For the reasons discussed above, the AEFTC respectfully submits that the Court should sustain Commerce's results on redetermination that provision of glass for LTAR and provision of aluminum extrusions for LTAR are countervailable subsidies.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for the Aluminum Extrusions Fair Trade Committee*

Dated: April 23, 2021

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Defendant-Intervenor's Response Comments on Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,095 words.

　_/s/ Robert E. DeFrancesco, III_
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee
(Representative Of)

April 23, 2021
(Date)