IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| and | )<br>)<br>) |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD, BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KING LTD., AND SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Consolidated Plaintiffs,<br>v. | )<br>)<br>) |
| UNITED STATES, | ) Consol. Court No. 16-00009 |
| Defendant, | )<br>) |
| and | )<br>) |
| THE ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | )<br>)<br>) |
| Defendant-Intervenor. | ) |

DEFENDANT'S CORRECTED RESPONSE IN SUPPORT OF
THE DEPARTMENT OF COMMERCE'S REMAND RESULTS

                                                          BRIAN M. BOYNTON
                                                          Acting Assistant Attorney General

                                                          JEANNE E. DAVIDSON
                                                         Director

|  |  |
|---|---|
|  | REGINALD T. BLADES, JR. |
|  | Assistant Director |
|  |  |
|  | DOUGLAS G. EDELSCHICK |
|  | Senior Trial Counsel |
| Of Counsel: | Commercial Litigation Branch |
|  | Civil Division |
| KIRRIN HOUGH | United States Department of Justice |
| Attorney | P.O. Box 480 |
| Office of the Chief Counsel | Ben Franklin Station |
|   for Trade Enforcement and Compliance | Washington, D.C. 20044 |
| United States Department of Commerce | Tel: (202) 353-9303 |
|  |  |
| April 26, 2021 | Attorneys for Defendant United States |

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................4

I.      Standard Of Review ................................................................................................5

II.     Commerce Complied With The Court's Order To Give Effect To The CVD Order's Language Excluding Non-Aluminum Extrusion Components Of Subassemblies ........................................................................................................5

        A.     Commerce's Explanation Regarding Its Finding That The Provision Of Glass For LTAR Subsidy Is Not Tied To Non-Subject Merchandise Is In Accordance With Law And Supported By Substantial Evidence ............................5

        B.     In Compliance With The Court's Remand Order, Commerce Reasonably Determined That The Application Of Jangho's Overall Subsidy Rate Gives Effect To The CVD Order's Language Excluding Non-Aluminum Components Of Subassemblies ..............................................................................13

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**                                                                                                     **Page(s):**

*Bristol Metals L. P. v. United States*, 703 F. Supp. 2d 1370 (Ct. lnt'l Trade 2010) ........................5

*Fengchi Imp. & Exp. Co., Ltd. of Haicheng City v. United States,* 98 F. Supp. 3d 1309 (2015) ....6

*Içdaş Celik Emerji Tersane ve Ulasim Sanayi A.S. v. United States*,
    Consol. Ct. No. 19-149, Slip Op. 21-20 (Ct. Int'l Trade Feb. 19, 2021)..........................12

*Jinan Yipin Corp. Ltd. v. United States*, 637 F. Supp. 2d 1183 (Ct. Int'l Trade 2009) ...................5

*Mitsubishi Heavy Indus. v. United States,* 97 F.Supp.2d 1203, 1209 n. 9 (2000) .........................6

*RZBC Group Shareholding Co., Ltd. v. United States*,
    100 F. Supp. 3d 1288 (Ct. Int'l Trade 2015) ...................................................................10

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    918 F.3d 1355 (Fed. Cir. 2019)..........................................................................................7

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    776 F.3d 1351 (Fed. Cir. 2015).....................................................................................7, 8

**Statutes:**

19 U.S.C. § 1516a................................................................................................................5

19 U.S.C. § 1677.................................................................................................................4

**Administrative Decisions:**

*Aluminum Extrusions from the People's Republic of China*, 80 Fed. Reg. 77,325
    (Dep't of Commerce Dec. 14, 2015) (final results 2013 CVD admin. review)...................2

*Aluminum Extrusions from the People's Republic of China*,
    76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (CVD order).........................2, 7

*Certain Steel Nails from the Sultanate of Oman*,
    80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) ...............................................10

*Citric Acid and Certain Citrate Salts from the People's Republic of China*,
    79 Fed. Reg. 108 (Dep't of Commerce Jan. 2, 2014) ..................................................... 9-10

*Countervailing Duties; Final Rule*,
    63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998)....................................... 8-9, 12

*Large Residential Washers from the Republic of Korea*,
    77 Fed. Reg. 75,975 (Dep't of Commerce Dec. 26, 2012) ...............................................12

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

|  |  |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD, BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KING LTD., AND SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | ) |
| Consolidated Plaintiffs, | ) |
| v. | ) |
| UNITED STATES, | ) Consol. Court No. 16-00009 |
| Defendant, | ) |
| and | ) |
| THE ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | ) |
| Defendant-Intervenor. | ) |

DEFENDANT'S CORRECTED RESPONSE IN SUPPORT OF
THE DEPARTMENT OF COMMERCE'S REMAND RESULTS

Defendant, the United States, respectfully submits this response to the comments (ECF Nos. 109, 110) filed by plaintiffs, Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho

Curtain Wall System Engineering Co., Ltd. (collectively, Jangho), and Taizhou United Import & Export Co. Ltd. (Taizhou) (collectively, plaintiffs), regarding the final results of redetermination issued by the Department of Commerce (Commerce), ECF No. 103 (remand results).  Commerce issued the remand results pursuant to this Court's remand order, ECF No. 100 (*Remand Order*).

For the reasons explained below, we respectfully request that the Court sustain the remand results and enter judgment for the United States because Commerce complied with the Court's *Remand Order*, and because the remand results are supported by substantial evidence and otherwise are in accordance with law.

## BACKGROUND

This litigation involves challenges to Commerce's final results in the 2013 administrative review of the countervailing duty (CVD) order on aluminum extrusions from the People's Republic of China (China).  *Aluminum Extrusions from the People's Republic of China*, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) (final results 2013 CVD admin. review) (Final Results), P.R. 425, and the accompanying Issues and Decision Memorandum (IDM).  P.R. 416; *see also Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (CVD Order).  Plaintiffs challenged the final results with respect to Commerce's determination to countervail subsidized purchases of glass and aluminum extrusions.  *See Remand Order* at 2.  The Court remanded this matter to Commerce (1) to give effect to the CVD Order's language excluding "non-aluminum extrusion components of subassemblies" from the scope; and (2) to reconsider and further explain its countervailing of aluminum extrusion "inputs" to the subject merchandise.  *See Remand Order* at 21.

On remand, Commerce corrected its analysis by providing further explanation regarding the correct treatment of the provision of glass and aluminum extrusions for less than adequate

remuneration (LTAR) as they relate to the production of subject merchandise, specifically curtain wall units.  Commerce released its draft redetermination on November 25, 2020.  Consistent with the *Remand Order*, Commerce reconsidered its decision in the remand results to countervail the provision of glass for LTAR by examining whether record information established tying of the subsidy to non-subject merchandise.  *See* Remand Results at 5.  In addition, Commerce further explained its countervailing of aluminum extrusion "inputs" to the curtain wall units and reconsidered whether the subsidies for the production of aluminum extrusions may have been double counted in this case.  *See id.* at 12-14.

Upon reexamining its decision in the remand results with regard to the countervailability of glass, Commerce found that its decision to countervail the provision of glass for LTAR is in accordance with law and with agency practice.  In reconsidering this issue, Commerce determined that the provision of glass for LTAR is neither tied to the production of subject merchandise nor to the production of non-subject merchandise.  *See* Remand Results at 7.  With respect to the provision of aluminum extrusions for LTAR, Commerce determined that it did not countervail any subsidy provided to the producer of aluminum extrusions, nor did it countervail any subsidy provided to the respondent for the provision of curtain wall units for LTAR.  *See id.* at 14.  Thus, Commerce concluded that subsidies for the production of aluminum extrusions were not double counted.  *See id.*

On December 2, 2020, the Aluminum Extrusions Fair Trade Committee (the petitioner) and Jangho each submitted comments in response to Commerce's draft redetermination.  *See* Remand Results*.*  Petitioner agreed with Commerce's finding that the provision of glass for LTAR is a countervailable subsidy program, and that inputs into the curtain wall units may be countervailed as providing benefits to those inputs, thereby, benefiting the subject merchandise.

*See* Remand Results at 15-16. By contrast, Jangho argued that to "give effect" to the language excluding "non-aluminum extrusion components of subassemblies" from the scope of the CVD Order, Commerce must treat glass subsidies as tied to non-subject glass components of subassemblies throughout its analysis. *See id.* at 16-17. Jangho further contended that Commerce may not lawfully impose countervailing duties in any amount based on a subsidy tied to non-subject merchandise. *See id.* Commerce addressed these comments in its remand results.

ARGUMENT

In its comments in opposition to the remand results, Jangho argues that Commerce's remand results do not comply with the *Remand Order* to give effect to the CVD Order's language excluding non-aluminum extrusion components of subassemblies' from the scope of the order. *See* Jangho Comments at 3. Jangho makes no comment on Commerce's remand results with respect to treating aluminum extrusions purchased for LTAR as inputs for subject merchandise. *See id.* Taizhou also submitted comments in opposition to the remand results, in which it agreed with and incorporated the arguments made by Jangho. *See* Taizhou Comments at 1.

Because neither Jangho nor Taizhou commented on the provision of aluminum extrusions for LTAR in Commerce's redetermination of the final results, this response addresses only the countervailability of the provision of glass for LTAR. Upon reconsidering its determination in the remand results with respect to the provision of glass for LTAR, Commerce reasonably continued to find on remand that the provision of glass for LTAR is countervailable within the meaning of 19 U.S.C. § 1677(5)-(5A). Accordingly, we respectfully request that the Court sustain Commerce's remand results.

I.  Standard Of Review

This Court sustains Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Bristol Metals L. P. v. United States*, 703 F. Supp. 2d 1370, 1373 (Ct. lnt'l Trade 2010). "The court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Jinan Yipin Corp. Ltd. v. United States*, 637 F. Supp. 2d 1183, 1185 (Ct. Int'l Trade 2009) (citations omitted).

II. Commerce Complied With The Court's Order To Give Effect To The CVD Order's Language Excluding Non-Aluminum Extrusion Components Of Subassemblies

> A.  Commerce's Explanation Regarding Its Finding That The Provision Of Glass For LTAR Subsidy Is Not Tied To Non-Subject Merchandise Is In Accordance With Law And Supported By Substantial Evidence

In the final results, Commerce concluded that the "the benefits arising from the provision of glass for LTAR are not tied to *non*-subject merchandise." *See* IDM at 97-98 (P.R. 416). In its remand results, Commerce recognized the Court's concern that Commerce's decision to countervail glass for LTAR appeared to be based on an understanding that "the benefits derived from the purchase of glass for LTAR are tied to subject merchandise." *See* Remand Results at 7; *see also* IDM at 97-98 (P.R. 416). Accordingly, Commerce further explained and clarified its treatment of the provision of glass for LTAR relating to the curtain wall units. *See* Remand Results at 7.

According to Jangho, Commerce failed to comply with the Court's instructions to give effect to the CVD Order's language excluding non-aluminum extrusion components of subassemblies from the scope of the CVD Order. Jangho argues that Commerce "was not at liberty to presume it could provide further explanation in lieu of following the clear direction of

the Court to give effect to the Order's language." *See* Jangho Comments at 3. Jangho further argues that Commerce failed to comply with the Court's order, because it attempted to substitute a *post hoc* rationalization of its determination for its actual determination. *See id*. at 4-5.

As an initial point, the explanation and clarification provided by Commerce in its remand results regarding its treatment of the provision of glass for LTAR does not violate the instructions of the Court, nor is it *post hoc* rationalization. This Court has found that a remand proceeding is an administrative proceeding. *See Fengchi Imp. & Exp. Co., Ltd. of Haicheng City v. United States,* 98 F. Supp. 3d 1309, 1315 (2015). Accordingly, because a remand is an administrative proceeding, "Commerce's comments are not the [*post hoc*] rationalization of its counsel." *See id.; see also Mitsubishi Heavy Indus. v. United States,* 24 CIT 275, 287 n. 9, 97 F.Supp.2d 1203, 1209 n. 9 (2000). In this case, the Court ordered that Commerce "give effect to the CVD Order's language excluding 'non-aluminum extrusion components of subassemblies' from the scope of the order". *See Remand Order* at 21. In its remand determination, Commerce complied with the Court's order by giving effect to the CVD Order's language, and Commerce also appropriately explained *how* it gave effect to the Order's language, which is entirely in compliance with the Court's *Remand Order*.

Regarding the merits of Commerce's remand results, Jangho maintains that Commerce failed to comply with the Court's order, because Commerce unreasonably concluded that subsidies bestowed by the provision of glass at LTAR are not tied to non-subject merchandise. *See* Jangho Comments at 7. According to Jangho, Commerce based its determination in the final results on a finding that glass is an input for subject merchandise. *See id*. at 5. Jangho argues that, in the remand results, Commerce "attempt{ed} to recast these record facts by claiming that it based its determination on a finding that the subsidy was not tied to subject merchandise and

that the respondent parties had failed to submit evidence that the subsidy was tied to non-subject merchandise." *See id.* However, as demonstrated below, Jangho misconstrues Commerce's explanation regarding its evaluation of the provision of glass for LTAR program in this review.

Regarding the definition of in-scope merchandise, particularly subassemblies, the scope of the Order states, in relevant part:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

CVD Order, 76 Fed. Reg. at 30,654.

This Court and the Federal Circuit have both affirmed that curtain wall units, which comprise aluminum extrusions and other components, are subject to the scope of the Order. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 961 F. Supp. 2d 1291, 1298 (Ct. Int'l Trade 2014), *aff'd*, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (*Yuanda I*). As stated in the CVD Order, and as this Court observed, "{t}he scope does not include the non-aluminum extrusion components of subassemblies." *See* CVD Order; *see also* Remand Order at 9.

The Federal Circuit has also affirmed Commerce's interpretation of the scope language that subassemblies are excluded only if they are imported as part of a finished goods kit. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) (*Yuanda II*) ("We agree with Commerce's straightforward reading of the AD & CVD Orders' language, quoted at the outset of this opinion, as excluding 'subassemblies' only if they are 'imported as part of the finished goods 'kit' as defined."). Furthermore, the Federal Circuit

has upheld Commerce's finding that curtain wall units "themselves are not 'finished merchandise.'" *See Yuanda I*, 776 F.3d at 1359. In particular, the Federal Circuit affirmed Commerce's determination that curtain wall units are subject to the scope of the Orders and do not qualify for the finished merchandise exclusion because they are aluminum extrusions that can be described as "subassemblies" for curtain walls. *Id.* at 1357-59.

Additionally, the Federal Circuit upheld Commerce's determination that "finished merchandise is a 'complete product upon entry, 'but that units for curtain walls are designed to be attached to other units to eventually form a completed curtain wall{,}" and the underlying Court decision that "an individual curtain wall unit 'has no consumptive or practical use because multiple units are required to form the wall of a building.'" *See id.* The Federal Circuit affirmed that "{a} single unit does not a curtain wall make, nor is it a finished product{, }" and that a "subassembly, here a curtain wall unit, cannot be a finished product." *See id.* Further, as observed by the Court in this case, the plain language of the scope indicates that the portions of the curtain wall units that do not consist of aluminum extrusions are not included in the scope of the Orders.

As Commerce found in the final results, glass is an input used in the manufacture of subject merchandise (the curtain wall units produced by the respondent and that have been found to be within the scope of the Orders on aluminum extrusions). IDM at 97-98. Accordingly, Commerce concluded that the "benefits arising from the provision of glass for LTAR are not tied to non-subject merchandise." *See id.* Under its longstanding "tying" methodology, Commerce may find that a subsidy is tied to a particular product, or other subset of the company's operations, when there is clear and robust information showing that the subsidy was in fact tied at the point of bestowal. *See* Remand Results at 18 (citing *Countervailing Duties; Final Rule*, 63

Fed. Reg. 65,348, 65,402 (Dep't of Commerce Nov. 25, 1998) (stating that Commerce analyzes "the purpose of the subsidy based on information available at the time of bestowal"). In the 2013 review, no record information establishes tying of the subsidy to non-subject merchandise and, thus, Commerce included the glass for LTAR purchases in its subsidy analysis.

Although in most instances when Commerce investigates an LTAR program, the goods provided are input goods, that is largely a function of the alleged programs that the petitioners bring before Commerce. That, however, should not be interpreted to mean that only the provision for LTAR of input goods for the production of subject merchandise may be found to provide countervailable benefits to the respondent. *See Remand Results* at 9. Indeed, Commerce may find a countervailable subsidy from the government provision of any good for LTAR that results in a benefit to the recipient company. In contrast, a more restrictive interpretation of the term "good" or "input" (that is, that the good or input must be a good used in the production of subject merchandise or that is itself subject merchandise) would create a loophole that would undermine the intent of the countervailing duty law by preventing Commerce from addressing the injury resulting from the provision of subsidies by foreign governments' provision of goods that benefit the general operation of a producer. *See id.* at 9-10. Indeed, when a company purchases a particular item for LTAR, the company's funds that may have otherwise been used to purchase that item are now available to be used in other parts of the company. *See id.* at 10. A classic example of such a good is land. If provided at LTAR, the provision of this good benefits the general operation of a producer but the good itself is not directly used in the production of subject merchandise, nor is it itself subject merchandise. Commerce has consistently countervailed the provision of land for LTAR, and the Court has previously sustained such treatment. *See*, *e.g.*, *Citric Acid and Certain Citrate Salts from the People's*

*Republic of China*, 79 Fed. Reg. 108 (Dep't of Commerce Jan. 2, 2014) (final results 2011 admin. review), and accompanying IDM at "Provision of Land for LTAR to Enterprises in Strategic Emerging Industries in Shandong Province" and Comment 10 (countervailing a land for LTAR program), *sustained by RZBC Group Shareholding Co., Ltd. v. United States*, 100 F. Supp. 3d 1288, 1303-04 (Ct. Int'l Trade 2015).

It is undisputed that the respondent company is a producer of subject merchandise, and it is also undisputed that the respondent company received benefits under the glass for LTAR program. Further, Commerce has a well-established practice of not considering the use and effect of subsidies. *See, e.g., Certain Steel Nails from the Sultanate of Oman*, 80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) (final CVD determ.), and accompanying IDM at 15. To require that the inputs that provided a benefit to the company (that is, inputs provided at LTAR) are actually part of the subject merchandise would introduce a new requirement concerning the use of such subsidies and would conflict with Commerce's prior practice of finding that inputs obtained for LTAR provide countervailable subsidies, regardless of the product produced with the inputs. *See id.* Accordingly, Commerce continued to find that it is appropriate to countervail such subsidies, because they provide a benefit to the respondent company, a producer of subject merchandise.

Further, having determined the subsidy rate for each program, and the net subsidy rate for each individually examined respondent, the manner in which these rates are applied, that is, when duties are assessed, gives effect to the Order's language excluding non-aluminum extrusion components of subassemblies. The assessment of duties on entries of subject merchandise at the U.S. border, which applies the calculated CVD rate to the value of the subject merchandise entered into the United States, is a separate and distinct calculation from the

determination of the type and amount of countervailable subsidies provided to a respondent company, and the resulting CVD rate. Thus, even though Commerce's subsidy analysis includes benefits received through the provision of glass for LTAR, the application by U.S. Customs and Border Protection (CBP) of the CVD rate, for purposes of calculating the respondents' duty liability, is based solely on the entered value of the aluminum extrusions subject to the Order. *See* Remand Results at 12. Therefore, the duty liability is calculated based solely on the value of the aluminum extrusion components included in the curtain wall unit, exclusive of the value of the glass and any other non-aluminum extrusions components, when the respective values and necessary information are reported to CBP.[1]

As Commerce explained, its decision to countervail the provision of glass for LTAR was in accordance with its law and its practice, "which recognizes that the provision of goods for LTAR is not a subsidy that is tied to the production of particular merchandise, and as such . . . is neither tied to the production of subject merchandise nor to the production of non-subject merchandise." Remand Results at 7. When it determines that subsidies are tied only to non-subject merchandise, Commerce's practice is not to include them in the calculation of the countervailable subsidy rate. *See id.* Similarly, when Commerce determines that subsidies are tied only to subject merchandise, it limits the denominator to subject merchandise sales. *See id.* In this case, because Commerce found the subsidy was not tied to the production of a particular product (subject merchandise or non-subject merchandise), Commerce used the company's total sales as the denominator, reflecting the fact that the subsidy benefited the company's overall

---

[1] In other words, if Commerce were to find that a producer received a $100 subsidy in the form of glass for LTAR and the producer had $1,000 in total sales of all products, Commerce may calculate a subsidy rate of 10 percent, and U.S. Customs and Border Protection may assess that 10 percent subsidy rate upon only the value of the aluminum extrusions portion of the imported curtain wall units.

operations. *See id.* Accordingly, this explanation does not change Commerce's ultimate conclusion that the glass for LTAR program is not tied exclusively to *non*-subject merchandise; it simply sheds more light as to how Commerce arrived at this conclusion.

Jangho further contends that there is "no reasonable basis in the record for concluding that subsidies bestowed by the provision of glass at LTAR are not tied to non-subject merchandise." *See* Jangho Comments at 7. However, Jangho again misunderstands Commerce's regulations and practice regarding the tying of subsidies. Commerce's practice is that, for a subsidy to be treated as "tied" to a particular product, record evidence must reflect that at the point of bestowal there was an express condition limiting the use of the subsidy for that particular product. *See* Remand Results at 18 (citing *Countervailing Duties; Final Rule*, 63 Fed. Reg. at 65,402 (stating that Commerce analyzes "the purpose of the subsidy based on information available at the time of bestowal"). In past administrative cases, Commerce has looked for such evidence in documentation such as an executed contract or agreement with express language specifying, for example, the purposes to which the subsidy is intended to be used. *See*, *e.g.*, *Large Residential Washers from the Republic of Korea*, 77 Fed. Reg. 75,975 (Dep't of Commerce Dec. 26, 2012) (final CVD determ.), and accompanying IDM at 17. Accordingly, in this review, Commerce focused its analysis on whether the provision of glass for LTAR was intended at bestowal for use in a certain, specified subset of Jangho's production. In the time since Commerce filed the remand results, this Court has endorsed Commerce's approach to examine the purpose of the subsidy at the time of bestowal. *See Içdaş Celik Emerji Tersane ve Ulasim Sanayi A.S. v. United States*, Consol. Ct. No. 19-149, Slip Op. 21-20 (Ct. Int'l Trade Feb. 19, 2021). In this case, Commerce reasonably concluded that the record contains no evidence that establishes an intentional restriction of the subsidy, at the time of bestowal, to non-

subject merchandise.  *See* Remand Results at 21; *see also* IDM at Comment 8 (P.R. 416).  As Commerce explained, it found no information on the record, such as an executed contract or an agreement with express language, establishing that Jangho's purchases of glass for LTAR were designated for a certain subset of its production.  *See id*.  Accordingly, the absence of such record evidence indicates that Jangho was permitted to use the glass in any of its production.  *See id.*

Furthermore, as Commerce explained in the remand results, Commerce reasonably found, based on reasonable inferences drawn from substantial evidence, a countervailable subsidy to Jangho in the form of the provision of glass for LTAR resulting in a benefit to Jangho.

> B. In Compliance With The Court's Remand Order, Commerce Reasonably Determined That The Application Of Jangho's Overall Subsidy Rate Gives Effect To The CVD Order's Language Excluding Non-Aluminum Components Of Subassemblies

Commerce explained on remand that "having determined the subsidy rate for each program, and the net subsidy rate for each individually examined respondent, the manner in which these rates are applied, *i.e.,* when duties are assessed, gives effect to the [CVD Order's] language excluding non-aluminum extrusion components of subassemblies."  *See* Remand Results at 12.  Nevertheless, Jangho mistakenly argues that Commerce may not impose countervailing duties in any amount based on a subsidy tied to non-subject merchandise.  *See* Jangho Comments at 8-9.  According to Jangho, imposing a countervailing duty based on the value of the subject aluminum extrusions would "reduce but not eliminate what is unlawful countervailing duty."  *See id.*  Jangho's argument is without merit.

Because Commerce determined that the provision of glass for LTAR subsidy was not tied to non-subject merchandise, it continued to find that the benefits Jangho received under this program were appropriately included in Jangho's overall subsidy rate.  *See* Remand Results at 24.  Accordingly, Commerce properly concluded that the manner in which Jangho's overall

- 13 -

subsidy rate was applied, that is, when duties are assessed, properly gives effect to the CVD Order's language excluding components of subassemblies. *See id.* Likewise, even though Commerce's subsidy analysis included benefits received through the provision of glass for LTAR, Commerce reasonably determined that U.S. Customs and Border Protection (CBP) calculates the respondents' duty liability based solely on the entered value of the aluminum extrusions subject to the CVD Order. *See id.* In other words, if CBP cannot separate the value of the non-subject components upon entry, the duty will be applied to the total value, regardless of whether the subsidies come from the provision of glass for LTAR or any other type of subsidy. *See id.* As a result, when the respective values and necessary information are reported to CBP, liability is based on only the value of the aluminum extrusion components included in the curtain wall unit, exclusive of the value of the glass and other non-aluminum extrusions components. This complies with the Court's remand order.

## CONCLUSION

For all these reasons, we respectfully request that the Court sustain Commerce's remand results.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

 s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

 s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel

| | |
|---|---|
| Of Counsel: | Commercial Litigation Branch |
| | Civil Division |
| KIRRIN HOUGH | United States Department of Justice |
| Attorney | P.O. Box 480 |
| Office of the Chief Counsel | Ben Franklin Station |
|   for Trade Enforcement and Compliance | Washington, D.C. 20044 |
| United States Department of Commerce | Tel: (202) 353-9303 |
| | |
| April 26, 2021 | Attorneys for Defendant United States |

CERTIFICATE OF COMPLIANCE

    I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 4,070 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

                                                    s/ Douglas G. Edelschick